UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Agre et al.<br>v.<br>Rain & Hail LLC et al. | 0[redacted] |
| Abbas et al.<br>v.<br>IGF Ins. Co. | 01-CV-1630(PAM/SRN) |
| Breitkreutz Farms Inc. et al.<br>v.<br>Ag Force Ins. Services, Inc. et al. | 01-CV-1631(DSD/SRN) |
| Aeikens et. al.<br>v.<br>Hartford Ins. Co. | 01-CV-1632(DSD/SRN) |
| Abbas et al.<br>v.<br>Acceptance Ins. Co. | 01-CV-1633(ADM/AJB) |
| Holien et al.<br>v.<br>Great American Ins. Co. | 01-CV-1634(DWF/AJB) |

FILED
RICHARD D. SLETTEN, CLERK
APR 2002
JUDGEMENT ENTERED
DEPUTY CLERK'S INITIALS

| | | |
|---|---|---|
| Ahrenholz et al.<br><br>v.<br><br>Farm Bureau Mut. Ins. Co. | )<br>)<br>)<br>)<br>) | 01-CV-1635(DSD/JGL) |
| Anderson et al.<br><br>v.<br><br>Farmers Alliance Mut. Ins. Co. et al. | )<br>)<br>)<br>)<br>) | 01-CV-1636(DWF/SRN) |
| Anderson Farms et al.<br><br>v.<br><br>Fireman's Fund Ins. Co. | )<br>)<br>)<br>)<br>) | 01-CV-1637(PAM/JGL) |
| Broderius et al.<br><br>v.<br><br>Rural Community Ins. Services | )<br>)<br>)<br>)<br>) | 01-CV-1688(JRT/FLN) |

ORDER

Plaintiffs seek remand of these matters to Minnesota state court. Plaintiffs deny this Court has subject matter jurisdiction over their claims.[1] Defendants oppose, claiming the complaints provide three separate grounds for jurisdiction: diversity

[1]Because these cases involve substantially the same legal and factual issues, the parties have agreed to consolidate them for purposes of discovery and pretrial motions. For purposes of this motion, the Court considers the claims asserted in Agre v. Rain & Hail L.L.C., Court File No. 01-CV-1629, to be representative of the claims in all cases.

jurisdiction, pursuant to 28 U.S.C. § 1332; federal question jurisdiction, pursuant to 28 U.S.C. § 1331; and, federal party removal jurisdiction, pursuant to 28 U.S.C. § 1442(a).

I. Background

For purposes of this opinion, the facts are few, assumed to be true, and easily summarized.

Plaintiffs are Minnesota sugar beet growers. In October, 2000, a hard frost damaged or destroyed their crops, causing significant financial losses. Plaintiffs had purchased multi-peril crop insurance which, according to their complaint, covers this loss. The crop insurance was in the form of a policy issued by the Federal Crop Insurance Corporation ("FCIC"), a government agency created under the Federal Crop Insurance Act ("FCIA").

When plaintiffs discovered the frost damage, they submitted claims for payment under their crop insurance contracts. Defendants neither acted upon nor paid the claims. In August, 2001, plaintiffs filed the above-captioned cases in Minnesota state court, seeking contract damages "in excess of $50,000.00," including direct, consequential, and incidental damages for losses incurred following the freeze. Each plaintiff also requested damages, attorneys fees, and costs under the Minnesota Prevention of Consumer Fraud Act. Defendants, various crop insurance companies, timely removed the action to this Court in September, 2001.

II. Analysis

It is axiomatic that federal courts are courts of limited jurisdiction. As such, the requirement that jurisdiction be established as a threshold matter is inflexible and without exception. Godfrey v. Pulitzer Publ'g Co., 161 F.3d 1137, 1141 (8th Cir. 1998). While defects in personal jurisdiction may be waived by the parties, subject matter jurisdiction is primary and acts as an absolute stricture on the Court. See In re: Prairie Island Dakota Sioux, 21 F.3d 302, 304-05 (8th Cir. 1994). Congress has established diversity jurisdiction and federal question jurisdiction as the bases for subject matter jurisdiction. The removal statute was drafted to limit removal jurisdiction; therefore, the Court resolves any doubt against removal jurisdiction. See American Fire & Cas. Co. v. Finn, 341 U.S. 6 (1951).

A. Diversity Jurisdiction

The first potential jurisdictional basis is diversity. Defendants claim diversity jurisdiction exists in eight of the ten cases.[2] In order to remove a case to federal court on this basis, defendants must establish that the parties are citizens of different states and that the amount in controversy exceeds $75,000. 28 U.S.C. § 1332. The parties generally agree that the

[2]Diversity jurisdiction is invoked in Court File Nos.: 01-CV-1629, 01-CV-1630, 01-CV-1632, 01-CV-1633, 01-CV-1634, 01-CV-1635, 01-CV-1636, and 01-CV-1637.

complaints show diversity of citizenship. But the parties vigorously disagree as to whether the complaints demonstrate the amount in controversy exceeds $75,000 for each plaintiff.

When contesting a motion to remand, the non-moving party bears the burden of proving that the complaint establishes the requisite amount in controversy by a preponderance of the evidence. See United States v. Hayes, 515 U.S. 737, 743 (1995); Hatridge v. Aetna Casualty & Surety Co., 415 F.2d 809, 814 (8th Cir. 1969). A post-petition affidavit is relevant to clarify ambiguities regarding damages alleged at time of removal. See Dryda v. Wal-Mart Stores, Inc., 41 F. Supp. 2d 943, 949 (D. Minn. 1999).

Defendants, in removing these cases to federal court, claim that, notwithstanding the complaints' stated claim of damages in excess of $50,000, in reality, each plaintiff actually seeks a sum in excess of $75,000. Defendants reach this conclusion using a number of formulations. First, they claim that plaintiff Southern Minnesota Beet Sugar Cooperative seeks damages of $77,500,000, and suggest that the Court divide this sum by the number of cooperative-members, thus arriving at an average loss of approximately $140,000. They argue that this sum satisfies the amount in controversy requirement. The Court rejects this theory.

Defendants' average-loss methodology fails to demonstrate that each individual plaintiff has actually pleaded the requisite $75,000 amount in controversy. The argument purposely

misconstrues the amount of damages each individual plaintiff pleaded by improperly consolidating all of their claims. Congress's amount in controversy cannot be met by simplistic averaging, but must instead be shown by the amount included in the well-pleaded complaint. See Share v. Air Properties G. Inc., 538 F.2d 279, 282-83 (9th Cir. 1976).

Further, the Court considers -- and defendants cannot deny -- that at least some plaintiffs have suffered losses well below the $75,000 threshold. The Court therefore finds that the defendants'aggregated-sum-divided-by-the-number-of-plaintiffs theory does not establish, by a preponderance of the evidence, that each individual plaintiff's insurable contract losses were in excess of $75,000.

Defendants next argue that even if some individual claimants seek less than $75,000, the Court has supplemental jurisdiction over the less-than-$75,000 claims under 28 U.S.C. § 1367(a). This argument also fails. In Zahn v. International Paper Co., 414 U.S. 291, 296 (1973), the Supreme Court explicitly held that each member of a diversity-based class action must satisfy the amount in controversy. The Eighth Circuit Court of Appeals, considering the continuing validity of Zahn following congressional codification of supplemental jurisdiction under 28 U.S.C. § 1367(a), found the amount in controversy requirement unchanged. See Trimble v. Asarco, Inc., 225 F.3d 946, 960-62 (8th Cir. 2000). Applying these

principles, it is clear that each individual plaintiff must meet the amount in controversy requirement in order to establish diversity jurisdiction.

As a third fallback position, defendants ask the Court to sever those claims which do not satisfy the amount in controversy, by remanding the less-than-$75,000 claims, and keeping the over-$75,000 claims. While charming in its willingness to allow this Court to cherry-pick the "bigger" cases, this argument, too, must fail. It is clear that, in class action cases, a court may sever claims which do not satisfy the amount in controversy requirement, Zahn, 414 U.S. at 295. But a court lacks this power in cases which simply involve a large number of individual -- as opposed to class action -- joined parties. See Crenshaw v. Great Cent. Ins. Co., 482 F.2d 1255, 1260 (8th Cir. 1973) (remanding claims in insurance case because all plaintiffs do not meet amount in controversy requirement).

Defendants' final theory, however, has merit, and compels this Court's decision to maintain a number of the cases in federal court. Here, defendants rely on the complaints' actual claims, rather than on the way they wish plaintiffs had asserted those claims.

Defendants argue that the complaints, fairly read, assert claims in excess of $75,000, rather than the artfully asserted "in excess of $50,000" amount stated on the face thereof. They base

this assertion on the fact that each plaintiff seeks over $50,000 in contract damages,[3] and makes an additional demand for $50,000 in statutory fraud damages, attorney's fees and costs. Here, defendants prevail, because when determining the amount in controversy in a case brought under diversity jurisdiction, the Court aggregates fraud and contract claims. See McCall v. UNUM Life Ins. Co. of America, 2001 U.S. Dist. LEXIS 18132, *9-10 (N.D. Tx. November 6, 2001) (aggregating claims sounding in tort and claims sounding in contract); see also Lamb v. Amalgamated Labor Life Ins. Co., 602 F.2d 155 (8th Cir. 1979) (considering aggregation of tort and contract claims to meet amount in controversy requirement); Lynch v. Porter, 446 F.2d 225, 228 (8th Cir. 1971) (allowing plaintiffs to aggregate claims to meet amount in controversy requirement). Plaintiffs have asserted discrete claims sounding in both contract and fraud. While plaintiffs defend against removal by claiming the Minnesota Consumer Fraud Act claim merely adds attorneys fees and costs to what is otherwise an alternative contract remedy,[4] the Court finds this claim actually

---

[3]Plaintiffs seek direct, consequential, and incidental damages in Counts 1-3 for breach of contract, breach of implied duty of faith and fair dealing, and estoppel.

[4]Further, Minnesota Stat. § 8.31, which provides a civil cause of action for the Minnesota Consumer Fraud Act, includes relief beyond attorneys fees and costs:

> "[A]ny person injured by a violation of any of the laws referred to in subdivision 1 may bring a civil action and recover damages, together with costs and disbursements, including costs of investigation and reasonable attorney's fees, and receive other equitable relief as determined by the court."

Plaintiff's complaints do not limit their fraud count damage claims to attorney's fees and costs.

sounds in tort.

The Minnesota Supreme Court has carefully considered the nature of the Minnesota Consumer Fraud Act in Group Health Plan, Inc. v. Philip Morris Inc., 621 N.W.2d 2 (2001). See also Minn. Stat. §§ 325F.67-325F.70; Minn. Stat. § 8.31. In Group Health, the Court recognized the Act's broad remedial consumer protection aspect, characterizing the regulated conduct as "a misdemeanor and a public nuisance." See id. at 11-12. The Court described the statute as an alternative to common law fraud, see id. at 13-14; State by Humphrey v. Alpine Air Prods., Inc., 500 N.W.2d 788, 790 (Minn. 1993), and as a tort cause of action. See West v. Walker, 231 N.W. 826 (Minn. 1930); Opatz v. John G. Kinnard & Co., 454 N.W.2d 471,473 (Minn. 1990).

The Supreme Court also referred to the Consumer Fraud Act statute as providing a tort claim. See Group Health Plan, Inc., 621 N.W.2d at 7. The statutory language, applying as it does to the sale of merchandise, further distinguishes the cause of action from the plaintiffs' contract claims. The statute modifies the sale of contracts, a transaction distinct from the contracts themselves. See Minn. Stat. § 325F.68 (emphasis added); Group Health Plan, Inc., 621 N.W.2d at 12. Plaintiffs' tort claims under the Fraud Act, then, are distinct from their contract claims,

because they result from defendants' allegedly fraudulent sales techniques and behavior. In asking for both contract and tort relief, plaintiffs have pleaded damages in an amount in excess of $75,000, thereby meeting the requirements of diversity jurisdiction.

B. Federal Question Jurisdiction

In the remaining two cases before the Court,[5] defendants have removed asserting federal question jurisdiction. Federal question jurisdiction exists when an action arises "under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The Court analyzes federal question jurisdiction under the well-pleaded complaint rule. See Catepillar Inc. v. Williams, 482 U.S. 386, 392 (1987). "The rule makes the plaintiff the master of the claim; he or she may avoid federal jurisdiction by exclusive reliance on state law." See id. Here, plaintiffs included four claims in their complaint, all -- at least facially -- based only on state law. Defendants, however, urge the Court to consider these claims as arising under federal law using two distinct theories -- complete preemption and substantial federal question.

1. Complete Preemption

For removal to be proper, a basis for federal jurisdiction must appear on the face of the complaint. See Franchise Tax Bd. of

[5]Court File Nos. 01-CV-1631 and 01-CV-1688 involve only claims of federal question jurisdiction.

California v. Construction Laborers Vacation Trust, 463 U.S. 1 (1983). But even when the complaint's face asserts only state-law claims, removal may still be proper under the doctrine of "complete preemption." See Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987). This is in contrast to those situations where a federal defense is asserted. A federal defense, as opposed to a plaintiff's federal claim, provides no access to the federal forum. Removal is proper only when the complaint necessarily raises a federal question. See Franchise Tax Bd., 463 U.S. at 10-12; Crews v. General Am. Life Ins. Co., 2001 U.S. App. LEXIS 26776, *2-3 (8th Cir. Dec. 17, 2001).

Defendants claim plaintiffs' state law claims are completely preempted by Congress's enactment of the FCIA. They particularly focus on regulations adopted by the FCIC pursuant to 7 U.S.C. § 1508(j)(1). According to defendants, when these regulations standardized the resolution of crop insurance disputes, they simultaneously compelled exclusive federal jurisdiction. See also 7 U.S.C. § 1501 et seq. Defendants contend this requirement, coupled with pervasive federal crop insurance regulation, manifests a congressional intent to enact a comprehensive scheme. See Fidelity Fed'l Sav. & Loan Ass'n v. De La Cuesta, 458 U.S. 141, 153-54 (1982) ("federal regulations have no less preemptive effect than federal statutes").

While the Eighth Circuit Court of Appeals has not considered

whether the FCIA and the FCIC regulations preempt state remedies, a number of other Courts have done so. Their analyses have not supported defendants' position. See Rio Grande Underwriters, Inc. v. Pitts Farms, Inc., 276 F.3d 683, 685-87 (5th Cir. 2001) (finding no preemption in either FCIA or in FCIC regulations); Williams Farms of Homestead, Inc. v. Rain & Hail Ins. Servs., Inc., 121 F.3d 630, 634 (11th Cir. 1997) (finding no Congressional intent to preempt state causes of action in the enactment of FCIA); Meyer v. Conlon, 162 F.3d 1264, 1268-70 (10th Cir. 1998); Holman v. Laulo-Rowe Agency, 994 F.2d 666, 669 (9th Cir. 1993) (finding no indication that Congress intended to create exclusive federal jurisdiction when enacting or amending FCIA); Reimers v. Farm Credit Servs. AgCountry, 2001 U.S. Dist. LEXIS 8388 (D.N.D. June 22, 2001) (rejecting complete preemption argument and declining to find federal jurisdiction).

When considering questions of complete preemption, the Eighth Circuit generally considers whether the supposedly-preempting statute manifests a clear congressional intent to displace all state law claims. See Magee v. Exxon Corp., 135 F.3d 599, 601-02 (8th Cir. 1998) ("Congressional intent is the touchstone of the complete preemption analysis."); see also Gaming Corp. of America v. Dorsey & Whitney, 88 F.3d 536, 544 (8th Cir. 1996) (considering statutory text, structure of regime, and legislative history to identify intent to preempt). Absent clear direction from Congress,

the Eighth Circuit declines to find the requisite "extraordinary preemptive power." See id. at 543.[6]

Defendants suggest the following language indicates Congress's intent to preempt state claims related to the FCIC:

> Under rules prescribed by the [FCIC], the [FCIC] may provide for adjustment and payment of claims for losses. The rules prescribed ... shall establish standards to ensure that all claims for losses are adjusted, to the extent practicable, in a uniform and timely manner.

7 C.F.R. § 457.8.

The Court is unconvinced. The simple fact that Congress has established an ordered regulatory scheme is insufficient to preempt all contract claims involving crop insurance. See Marcus v. AT&T Corp., 138 F.3d 46, 54 (2d Cir. 1998) (the complete preemption doctrine applies only where Congress has clearly manifested an intent to disallow state law claims in a particular field) (emphasis added); see also Smith v. GTE Corp., 236 F.3d 1292, 1313 (11th Cir. 2001) (finding that FCC regulations standardizing certain aspects of telephone industry insufficient to create complete preemption); Virgil v. Reorganized M.W. Co., Inc., 157 F. Supp. 2d 624, 631 (S.D. Miss. 2001) ("Not even Congressional intent to impose a uniform legal standard will necessarily imply its

---

[6]The United States Supreme Court has recognized complete preemption only in extremely limited circumstances: § 502(a) of the Employee Retirement Income Security Act ("ERISA"), 28 U.S.C. § 1332(a); actions under § 301 of the Labor Management Relations Act, 29 U.S.C. § 185; and in certain areas of Indian law. See Gaming Corp. of America, 88 F.3d at 543.

intent to establish complete preemption and hence federal removal jurisdiction.").

To the contrary, the FCIC regulations' own words strongly suggest a willingness to allow state proceedings, rather than preempting them; to wit:

> Nothing herein is intended to preclude any action of the part of any authorized . . . state court or any other authorized entity concerning . . . the regulations, any contract or agreement authorized by the Federal Crop Insurance Act or by regulations or procedures issued by the Corporation.

7 C.F.R. § 400.352(a); see also Rio Grande Underwriters, Inc., 276 F.3d at 687; Meyer v. Conlon, 162 F.3d at 1269. Such language scarcely manifests Congress's intent to preempt state proceedings. Another section of the regulations, entitled "state preemption," more explicitly expresses Congress's intention to avoid preemption, specifically calling for proceedings in any "court of competent jurisdiction," 7 C.F.R. § 400.176, which certainly does not preclude consideration of state courts. In the face of this language, the Court is unconvinced that the FCIC regulatory text demonstrates congressional intent to preclude concurrent jurisdiction.[7]

The regulatory text, in fact, appears to suggest a contrary intent. In the statute, Congress did confer exclusive federal

---

[7]Because the Court finds the FCIC regulations anticipate concurrent state and federal jurisdiction, the Court need not reach the question of whether a regulatory agency is capable of preempting or altering federal jurisdiction.

jurisdiction over cases in which the FCIC is a party. 7 U.S.C. § 1506(d). It also granted exclusive federal jurisdiction over indemnity suits against the FCIC. See 7 U.S.C. § 1508(j)(2)(A). These specific grants of exclusive jurisdiction lead the Court to consider one of the traditional canons of statutory interpretation: est inclusio unius est exclusio alterius.[8]

The FCIA's legislative history indicates Congress considered and then rejected exclusive federal jurisdiction over crop insurance questions. The House-Senate Conference Committee rejected Senate-passed language conferring exclusive federal jurisdiction over claims against insurance providers. See H.R. 4217, 103d Cong. § 1108(j)(2)(A) (1994); Halfmann v. USAG Ins. Servs., Inc., 118 F. Supp. 2d 714, 721 (N.D. Tex. 2000); Williams Farms of Homestead, Inc., 121 F.3d at 634-35.

In the face of the forgoing, defendants ask the Court to follow the decision in Owen v. Crop Hail Mgmt., 841 F. Supp. 297 (W.D. Mo. 1994), where a district court found complete preemption. The Court declines to do so. Congress knew how to preempt state claims; this Court is convinced it chose not to do so here.

2. Substantial Federal Question

As a fallback, defendants cite to City of Chicago v. Int'l College of Surgeons, 522 U.S. 156, 164 (1997), and ask the Court to

---

[8]Inclusion of one thing indicates exclusion of the other.

find that, given the nature of the federal crop insurance scheme, there exists a substantial federal question that justifies removal to the federal courts. They claim the crop insurance contract is defined by federal regulations, therey raising the requisite substantial question of federal law. See 7 U.S.C. § 1508(k)(1); 7 C.F.R. §§ 457.8; 457.109. The Court does not agree. In order to find recourse in federal question jurisdiction, defendants must demonstrate that "some substantial disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that one or the other claim is 'really' one of federal law." See McNeill v. Franke, 171 F.3d 561, 564 (8th Cir. 1999).

Here, the Court finds that plaintiffs' state law contract claims are not federal questions artfully pleaded, nor do they require an interpretation of federal regulations. See, e.g., Rio Grande Underwriters, Inc., 276 F.3d at 687 (finding no basis in the plaintiff's limited use of the crop insurance regulations to find a substantial federal question); Halfmann, 118 F. Supp. 2d at 721-22 (finding cases involving 7 C.F.R. pt. 400 do not raise a substantial federal question). The mere fact that a case touches on questions of federal law -- here crop insurance -- does not alone provide this Court with subject matter jurisdiction. See Merrell Dow Pharm., Inc. v. Thompson, 478 U.S. 804, 813 (1986). In our modern society, federal regulations impact almost every conceivable activity. If the Court were to accept the defendants'

position, it would be difficult to find any complex case which could not be removed to federal court.

Defendants finally cite A.W.G. Farms, Inc. v. Federal Crop Insurance Corp., 757 F.2d 720, 726 (8th Cir. 1985), for the proposition that interpretation of a federal crop insurance contract is a question of federal common law because it involves interpretation of a federal regulation. This argument also fails. The A.W.G. case stands for a much less grandiose proposition: that courts consider both state and federal insurance law to determine the scope of a crop insurance contract. See id. ("We look to state as well as federal caselaw as a source for federal common law on applicable principals of [contract] construction."). Having no other reason to find a federal question, this Court lacks jurisdiction.

3. Original Jurisdiction Over Federal Party

Finally, defendants claim this Court has original jurisdiction over any claims against the FCIC. See 7 U.S.C. § 1506(d); 28 U.S.C. § 1442. They base this argument on 28 U.S.C. § 1442(a)(1), which allows federal agencies to remove any civil action filed against them to federal district court. The Court finds that while defendants' premise is correct, it does not relate to this case. This is because the FCIC -- the party which holds the right of removal -- is not a party to this case; it is, instead, merely joined as a third-party defendant. This distinction is crucial,

because the Court must determine jurisdiction based solely on the complaint. As a result, the inclusion of the third-party defendant does not provide a basis for jurisdiction. See O'Neal v. Cigna Prop. & Cas. Ins. Co., 878 F. Supp. 848, 849 (D.S.C. 1995) (no original jurisdiction exists when FCIC was not named as a party).

More importantly, the federal agency here did not use its discretionary privilege to remove to federal court; rather, the private party defendants are seeking to assert that right on the FCIC's behalf. Because 28 U.S.C. § 1442(a) provides only the United States and its agencies with removal authority, it provides no jurisdictional basis for this case. See Willingham v. Morgan, 395 U.S. 402 (1969).

III. Conclusion

Defendants have shown the existence of diversity jurisdiction in eight of the ten matters pending before the Court. They have failed to demonstrate, however, that this Court possesses federal question jurisdiction over two of the cases, which compels this Court to remand cases numbered 01-CV-1631 and 01-CV-1688 to state court.

Accordingly, IT IS ORDERED that:

1. Plaintiffs' motion to remand matters 01-CV-1631 [Docket No. 9] and 01-CV-1688 [Docket No. 9] is granted.

2. Plaintiffs' motion to remand matters 01-CV-1629 [Docket No. 10], 01-CV-1630 [Docket No. 8], 01-CV-1632 [Docket No. 9], 01-

CV-1633 [Docket No. 7], 01-CV-1634 [Docket No. 8], 01-CV-1635 [Docket No. 8], 01-CV-1636 [Docket No. 9], and 01-CV-1637 [Docket No. 6] is denied.

3. The Court exercises its discretion under 28 U.S.C. § 1447(c) and awards attorneys' fees to plaintiffs' counsel in cases numbered 01-CV-1631 and 01-CV-1688.

Dated: April 15, 2002

JAMES M. ROSENBAUM
United States Chief District Judge