UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| In re 2000 Sugar Beet Crop Insurance Litigation | ) | 01-CV-1629(JMR/FLN) |
| | ) | 01-CV-1630(PAM/SRN) |
| | ) | 01-CV-1632(DSD/SRN) |
| | ) | 01-CV-1633(ADM/AJB) |
| | ) | 01-CV-1634(DWF/AJB) |
| | ) | 01-CV-1635(DSD/JGL) |
| | ) | 01-CV-1636(DWF/SRN) |
| | ) | 01-CV-1637(PAM/JGL) |
| | ) | 01-CV-2242(MJD/JGL) |

ORDER

This matter is before the Court on defendants' motion to dismiss, or alternatively, to compel arbitration. The parties previously appeared on a motion to remand on December 14, 2001.[1] For purposes of this motions only, the Court considers the facts as follows.

I. Background

These cases involve multi-peril crop insurance contracts covering sugar beets. Plaintiffs are sugar beet growers. In October, 2000, a hard frost damaged or destroyed their crops, causing significant financial loss. Plaintiffs had purchased multi-peril crop insurance that -- according to their complaint -- covered this loss. The crop insurance was in the form of a policy issued by the Federal Crop Insurance Corporation ("FCIC"), a government agency created under the Federal Crop Insurance Act

[1]The Court's decision on the question of remand is found at 196 F. Supp. 2d 905 (D. Minn. 2002).

FILED
RICHARD D. SLETTEN, CLERK
JUDGEMENT ENTERED ______
DEPUTY CLERK'S INITIALS ______

("FCIA"). This policy is codified at 7 C.F.R. §§ 457.8 and 457.109.

Plaintiffs took steps to mitigate the frost damage, but by mid-December, a loss had clearly occurred. After harvesting the crop and discovering the extent of the damage, plaintiffs submitted their crop insurance claims. Defendants denied the claims, apparently expecting the FCIC's Risk Management Agency ("RMA") to provide full coverage.

The question before the Court is whether it may now consider the merits of this dispute, or whether it must stay its hand, pending arbitration.

II. Discussion

The Court must first determine if an agreement to arbitrate exists and, if so, to ascertain the scope of that agreement. See Keymer v. Mgmt Recruiters Int'l, Inc. 169 F.3d 501, 504 (8th Cir. 1999). This is because, "[a]rbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed to so submit." See AT&T Technologies v. Communications Workers of America, 475 U.S. 643, 648 (1986).

Congress enacted the Federal Arbitration Act ("FAA"), 9 U.S.C. §2, to "reverse the longstanding judicial hostility to arbitration agreements." Gammaro v. Thorp Consumer Discount Co., 15 F.3d 93, 95 (8th Cir. 1994). Courts must consider arbitration disputes in favor of arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury

Const. Corp., 460 U.S. 1 24-25 (1983); Webb v. Rowland & Co., 800 F.2d 803, 807 (8th Cir. 1986). The Supreme Court has held that insurance policies are contracts "involving commerce," and therefore, subject to the FAA. See United States Dep't of Treasury v. Fabe, 508 U.S. 491 (1993); see also Allied-Brue Terminix Co., Inc. v. Dobson, 512 U.S. 265 (1995) (construing the FAA as coextensive with congressional commerce clause authority). With these principles in mind, the Court examines whether arbitration is required here.

The Court's analysis begins with Paragraph 20 of the standard insurance policy.[2] According to defendants, this clause requires arbitration, and compels a court to enforce its terms. The paragraph requires the parties to a crop insurance contract to arbitrate if they "fail to agree on any factual determination." See 7 C.F.R. 457.8 at ¶20. The policy further provides that the insured "may not bring legal action against [the insurer] unless [the insured] has complied with all the policy provisions." See id. at ¶25. Plaintiffs acknowledge that in some situations

[2]Paragraph 20, entitled "Arbitration," states:

(a) If you and we fail to agree on any factual determination, the disagreement will be resolved in accordance with the rules of the American Arbitration Association. Failure to agree with any factual determination made by FCIC must be resolved through the FCIC appeal provisions published at 7 CFR part 11.

(b) No award determination by arbitration or appeal can exceed the amount of liability established or which should have been established under the policy.

arbitration might be appropriate, but argue this is not such a case.

Plaintiffs first claim the insurance companies, having failed to adjust the claimed losses, made no factual determinations, thereby precluding arbitration because there is no determination to arbitrate. Plaintiffs' argument proves too much. It appears to the Court that defendants did, indeed, make an insurance coverage decision: they denied plaintiffs' claims; their offer, perforce, is zero. In correspondence to plaintiffs' attorney, defendants set forth a number of reasons for denying coverage. While plaintiffs may term these "perfunctory denials," even perfunctory denials are based on factual determinations. For purposes of this case, a determination has plainly been made.[3]

Nor will the Court do as plaintiffs suggest, and construe the reasons offered by defendants as involving only the legal effect of certain facts, and not actual factual determinations. This suggestion directly contravenes federal decisions addressing the breadth of the arbitration provision. See Ledford Farms, Inc. v. Fireman's Fund Ins. Co., 184 F. Supp. 2d 1242 (S.D. Fla. 2001) (requiring the parties to resolve their dispute through arbitration); Nobles v. Rural Cmty. Ins. Servs., 122 F. Supp. 2d

[3]If the defendants have truly failed to reach any decision, as plaintiffs suggest, that fact might suggest there is no ripe dispute in this case. Plaintiffs' suit clearly suggests they believe an active dispute exists between the parties, rendering the dispute arbitrable.

1290 (M.D. Ala. 2000) (compelling arbitration); see also IGF Ins. Co. v. Hat Creek P'ship, 349 Ark. 133 (2002) (compelling arbitration in crop insurance case); Crook v. Fireman's Fund Agribusiness, Inc., 2000 U.S. Dist. LEXIS 19878 (W.D. La. September 5, 2000) (compelling arbitration in crop insurance dispute).

In both of these cases, the courts interpreted the proffered reasons for denial of payment as presenting factual determinations -- not legal questions. See Ledford Farms, 184 F. Supp. 2d at 1245 (interpreting "practical to replant" to be a factual determination); Nobles, 122 F. Supp. 2d at 1296 (finding whether lands have been harvested within required period constitutes a factual determination). Such determinations of coverage questions are precisely those left to arbitration under the insurance contract. The parties have agreed to arbitrate their factual disputes; absent waiver, that agreement is binding.

Having found arbitration appropriate, the Court must decide whether defendants' action and inaction in this case constitute waiver. Before the Court can address the question of waiver, however, it must select between Minnesota's insurance and arbitration law, as arguably required by the McCarran-Ferguson Act, 15 U.S.C. § 1012, and the FAA.

McCarran-Ferguson, a so-called reverse preemption statute, provides in relevant part, "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State

for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." See 15 U.S.C. § 1012(b). Congress enacted McCarran-Ferguson in 1946 to protect the states' ability to regulate insurance. The Act prevents otherwise neutral laws from preempting state insurance statutes. United States Dep't of Treasury v. Fabe, 508 U.S. 491, 499 (1993).

The applicability of McCarran-Ferguson's reverse preemption to a federal crop insurance scheme raises a question of first impression in this Circuit. The question, however, was recently considered by the Supreme Court of Arkansas. See IGF Ins. Co. v. Hat Creek P'ship, 349 Ark. 133 (2002) (finding FAA preempts state arbitration statute in a crop insurance contract case). The Arkansas decision is in accord with a decision rendered by the United States Court of Appeals for the Tenth Circuit, State of Kansas ex rel. Todd v. United States, 995 F.2d 1505, 1511 (10th Cir. 1993). Each court found federal crop insurance regulations fell beyond the scope of McCarran-Ferguson. See also Haeberlin Farms, Inc. v. IGF Ins. Co., 641 N.W.2d 816 (IA 2002); Continental Cas. Co. v. McCall, No. 97-797 (Ok. July 1, 2002) (issuing writ of mandamus directing judge to order arbitration).

Congress, in 1938, adopted the original FCIC crop insurance plan for the express purpose of regulating the business of insurance, specifically crop insurance. See 7 U.S.C. § 1501 et

seq. (creating the Federal Crop Insurance Corporation). In doing so, Congress stated: "It is the purpose of this chapter to promote the national welfare by improving the economic stability of agriculture through a sound system of crop insurance and providing the means for the research and experience helpful in devising and establishing such insurance." 7 U.S.C. § 1502. This federal program was created to establish a nationwide system of crop insurance for farmers. As such, the Court finds it falls within the exemption to McCarran-Ferguson preemption, because this statute "specifically relates to the business of insurance." See cf. Humana Inc. v. Forsyth, 525 U.S. 299, 306 (1999) ("when Congress enacts a law specifically relating to the business of insurance, that law controls").[4] The Court finds it most unlikely that when Congress created federal crop insurance, specifically intending to

---

[4]The federal crop insurance program's exemption from McCarran-Ferguson is supported by the statute creating the FCIC, the federal regulations adopted to administer the program, and the crop insurance contract, all of which include preemption provisions. In 7 U.S.C. § 1501(l), Congress stated:

> State and local laws or rules shall not apply to contracts, agreements, or regulations of the Corporation or the parties thereto to the extent that such contracts, agreements, or regulations provide that such laws or rules shall not apply, or to the extent that such laws or rules are inconsistent with such contracts, agreements, or regulations.

See also Federal Crop Ins. Co. v. Merrill, 332 U.S. 380 (1947) (upholding FCIC preemption of state laws for insurance contracts). In its administrative regulations, the FCIC's regulations further preempt inconsistent state and local laws. See 7 C.F.R. §§ 351-52 (exercising the statutory authority to preempt); 7 C.F.R. 457.8 at ¶31 (explicitly preempting state law and policy).

provide a uniform and accessible system of farmer protection, it also intended to allow fifty states to administer that program according to fifty different state insurance regulatory schemes. Because Congressional statutes specifically relating to the business of insurance supersede state law, the FAA and other federal laws are applicable. The FCIC is to be construed according to the FAA and federal law, not Minnesota law or any other state law.

Having determined federal law is controlling, the Court turns to plaintiffs' assertion of waiver. Applying the FAA, the Eighth Circuit Court of Appeals found arbitration waived "where the party claiming a right to arbitrate: (1) knew of a right to arbitrate; (2) acted inconsistently with that right; and (3) prejudiced the party by these inconsistent acts." Ritzel Communications, Inc. v. Mid-American Cellular Tel. Co., 989 F.2d 966, 969 (8th Cir. 1993).[5] Waiver must be considered in light of federal policy favoring arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983). The parties do not contest that defendants knew of their right to arbitrate. Instead, plaintiffs

[5]Plaintiffs cite to Minnesota cases proposing various grounds for waiver: an unqualified denial of claims upon receipt of proof of loss, see, e.g., Moore v. Sun Ins. Office, 111 N.W. 260, 252 (Minn. 1907) and failure to proceed in good faith, citing Niazi v. St. Paul Ins. Co., 121 N.W.2d 349, 356 (Minn. 1963). Because the Court is applying the FAA standard, these arguments are incorporated into the waiver discussion above.

argue defendants acted inconsistently with that right, and thereby prejudiced them.

Plaintiffs claim defendants' actions have been inconsistent with an intent to arbitrate. Specifically, they argue defendants' actions, including removing this case to federal court, bringing a third-party complaint, and disputing subject matter jurisdiction, are inconsistent with an intent to arbitrate. But it is clear that mere participation in litigation is insufficient to overcome the presumption against arbitration. See Stifel Nicolaus & Co. v. Freeman, 924 F.2d 157, 158 (8th Cir. 1991) (finding party had not waived arbitration when no issues are litigated, and "limited discovery conducted will be usable in arbitration"). The fact that a party defended litigation does not constitute waiver, and should be differentiated from "substantially invoking [] litigation machinery." See Ritzel Communications, 989 F.2d at 969.

The Court does not find defendants have acted inconsistently with their right to arbitrate factual disputes. Their answers, filed on or about September 12, 2001, assert the right to arbitrate as an affirmative defense. See, e.g., Answer at ¶58. "Where, as here, the insurer raises the issue of arbitration within its Answer, and in so doing, has 'disclosed an intent . . . not to abandon the arbitration provision[,]' estoppel will not prevent the insurer from seeking a resort to the arbitration clause." Lakehead Pipe Line Co., Inc v. Am. Home Assurance Co., 981 F. Supp. 1205,

1218 (D. Minn. 1997) (ellipses in original). Because defendants asserted their right to arbitrate in their first responsive pleading, the case is not analogous to those where parties waited months before seeking arbitration, filing dispositive motions in the interim. See Ritzel Communications, 989 F.2d at 970 (citing St. Mary's Med. Ctr v. Disco Aluminum Prods., 969 F.2d 585, 587 (7th Cir. 1992)); Barker v. Golf U.S.A., Inc., 154 F.3d 788, 793 (8th Cir. 1998) (holding arbitration waived only when party attempts to litigate merits of the case). Similarly, defendants' arguments in favor of removal, as they involve only jurisdictional concerns, do not go to the substance of the insurance dispute and do not constitute waiver.

Defendants filing a third-party complaint against the FCIC raises a closer question, as it involves the defendants' active utilization of the litigation process. The "mere filing of a third-party complaint by a party that seeks arbitration will not permit a court to find that the right to arbitrate has been waived." See Maxum Foundations, Inc. v. Salus Corp., 779 F.2d 974, 982 (4th Cir. 1985). In order to find prejudice, plaintiffs must face procedural or other burdens caused by the addition of the third party defendant. See id.

Plaintiffs claim defendants' introduction of the FCIC into this dispute is prejudicial to their rights, specifically arguing that limited jurisdiction over the FCIC may require judicial

reconsideration of arbitral decisions. Plaintiffs' argument, however, asks the Court to find a mountain in a mole-hill. As plaintiffs have stated repeatedly, the arbiter has authority to resolve only factual disputes, and may not make legal determinations. This limitation makes extensively duplicative proceedings unlikely. Plaintiffs' claim that some issues might be reconsidered is simply insufficient to avoid arbitration. See Gree Tree Fin. Corp. v. Randolph, 531 U.S. 79, 92 (2000) (holding that the moving party bears burden of establishing likelihood that inappropriate costs will result).

In seeking to avoid arbitration, plaintiffs ignore the very nature of federal crop insurance. These contracts are written by the issuing defendants and reinsured by the FCIC, thereby virtually guaranteeing that any significant dispute will ultimately involve a suit for indemnification against the FCIC. While suits for derivative liability may in some situations be deemed a substantiative invocation of the litigation process, in the crop insurance context, such actions are routine and expected. The FCIC's inability to participate in the contractually agreed upon arbitration agreement was known to both parties at all times. That resolution of a dispute might be complicated is not grounds for the Court to find prejudice or waiver of arbitration.

Alternatively, plaintiffs claim a letter written by Minnesota Attorney General Michael Hatch proves defendants failure to act in

good faith, thus precluding arbitration. Even assuming Mr. Hatch's views could bind this Court -- a highly problematic presumption -- the behavior he describes evinces no desire to avoid arbitration. See Ivax Corp. v. B. Braun of Am., Inc., 286 F.3d 1309, 1318-19 (11th Cir. 2002) (finding bad faith conduct that breaches agreement between parties cannot be construed to waive arbitration). Difficulty in reaching a resolution to an insurance claim cannot be equated with waiver of arbitration; if it could, parties would never arbitrate insurance disputes. See id.

Finally, the Court considers remedies, for defendants seek dismissal of the case in its entirety, or alternatively, to compel arbitration. Defendants tie their dismissal request to the contract's language providing "[y]ou may not bring legal action against us unless you have complied with all of the policy provisions." 7 C.F.R. § 457.8 at ¶25. According to defendants, this language precludes any Court action.

This argument simply proves too much. If read as expansively as the defendants wish, the language would prevent any case from reaching court; after all, if "all the policy provisions" have been complied with, the parties would have satisfied contract terms resolving the claims amicably. While this is, indeed, a consummation devoutly to be wished, it may never exist in the real world.

Defendants' request, moreover, seems inappropriate given the restraints on the arbiter's power in this case. As the contract only provides for arbitration of factual disputes, the arbiter cannot resolve the plaintiffs' state law claims, see Ledford Farms, 194 F. Supp. 2d at 1245; Nobles, 122 F. Supp. 2d at 1301. Under the FAA, compelling arbitration, staying this matter, is appropriate. See 9 U.S.C. § 3 ("If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration . . . shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement.") (emphasis added); Houlihan V. Offerman & Co., 21 F.3d 692, 695 (8th Cir. 1994).

III. Conclusion

The parties herein entered into a standard crop insurance contract, one that requires as a prerequisite to any legal action resolution of all factual disputes through arbitration. That arbitration has not yet occurred. Accordingly, IT IS ORDERED that:

1. Defendant's motion to compel arbitration [Docket No. 39] is granted.

2. The above-captioned cases are stayed pending arbitration. The Court retains jurisdiction pending the outcome of those proceedings.

Dated: September 26, 2002

JAMES M. ROSENBAUM
United States Chief District Judge